[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO STRIKE
In the operative, two-count amended complaint, the plaintiff, ITech Consulting Partners, LLC, a technology recruiting and placement firm, alleges claims for breach of an employment contract and violation of CUTPA, respectively, against the defendant, its former employee, Matthew Briand. The plaintiff alleges that on November 1, 1998, the defendant began to work for the plaintiff and that the parties entered into the employment agreement on that date. The defendant left the plaintiff's employ on July 13, 2001, and soon thereafter started working with one of the plaintiff's competitors, Monroe Group, Inc.
The defendant filed a motion to strike the second count of the complaint on June 14, 2002, on the grounds that the plaintiff's allegations do not rise to the level of trade or commerce nor does it allege that the defendant's conduct was an unfair method of competition or deceptive act as is required for a CUTPA claim. The defendant filed a memorandum in opposition on July 19, 2002.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quotation marks omitted.)Gazo v. City of Stamford, 255 Conn. 245, 260, 765 A.2d 505 (2001). "A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." CT Page 2748 (Citations omitted.) Suffield Development Assn. v. National LoanInvestors, 260 Conn. 766, 771-72, 802 A.2d 44 (2002).
As to the defendant's first argument, "CUTPA applies to a broad spectrum of commercial activity . . . The act states that `[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce' . . . The act defines `trade or commerce' broadly to encompass `the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state' . . . The entire act is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." (Citations omitted; internal quotation marks omitted.) Ostrowski v. Avery, 243 Conn. 355, 378-79, 703 A.2d 117
(1997). The defendant relies primarily on Quimby v. Kimberly ClarkCorp., 28 Conn. App. 660, 613 A.2d 838 (1992), in which the court states that, "[a]lthough an employer may engage employees for the purpose of promoting trade or commerce, the actual employment relationship is not itself trade or commerce for the purpose of CUTPA." (Internal quotation marks omitted.) Id., 670. The court's conclusions in Quimby and the subsequent case law following that decision are inapplicable to the case at bar because of factual differences and the court's decision in LarsenChelsey Realty Co. v. Larsen, 232 Conn. 480, 656 A.2d 1009 (1995).
In Quimby, an employee sued his employer for violation of CUTPA based on the employer's failure to properly administer the employee's workers' compensation claim. The court held that the allegations fell entirely within the employer/employee relationship and, consequently, did not satisfy the trade or commerce requirement of CUTPA. In this case, however, the plaintiff's allegations do not pertain to an intra-office employer-employee dispute and therefore Quimby is not dispositive. Rather, the plaintiff alleges that since leaving its employ, the defendant has contacted and solicited business from the plaintiff's existing and prospective customers and consultants and has placed the plaintiff's professionals and consultants, who formerly worked for the plaintiff, with the plaintiff's existing or prospective customers.
This is similar to the type of conduct that the court found was sufficient to support a CUTPA claim in Larsen. In Larsen the court clarified its decision in Quimby by drawing a distinction between claims that arise within and those that arise outside the scope of the employment relationship. The court held in Larsen that the trial court erred in setting aside a jury verdict in favor of the plaintiff on its CUTPA claim when the defendant, while acting on behalf of a competitor, CT Page 2749 attempted to transfer his former employer's client base to a competitor, sent a letter to its clients stating that his former employer was going out of business and tried to hire his former employer's employees. The court based its decision on its conclusion that the defendant's anti-competitive activities were outside the scope of the employment relationship and decided that the trial court erred in focusing on the fact that the parties' relationship was that of employee-employer as the court did in Quimby. Thus, "[a]lthough purely intracorporate conflicts do not constitute CUTPA violations, actions outside the scope of the employment relationship designed to usurp the business and clientele of one corporation in favor of another . . . fit squarely within the provenance of CUTPA." (Internal quotation marks omitted.) Ostrowski v.Avery, supra, 243 Conn. 379. In this case, as in Larsen, the complaint alleges facts that lie outside the employer-employee relationship and that implicate trade or commerce and possibly violate CUTPA.
The defendant also moves to strike the second count on the ground that the plaintiff fails to adequately allege that he engaged in any unfair or deceptive acts. The Connecticut Supreme Court has "adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair [under CUTPA]: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons].
". . . All three criteria do not need to be satisfied to support a finding of [a violation of CUTPA]." (Internal quotation marks omitted.)Macomber v. Travelers Property Casualty Corp., 261 Conn. 620, 644,804 A.2d 180 (2002).
The allegations set forth in the second count sufficiently allege that the defendant engaged in unfair or deceptive acts. Specifically, the plaintiff alleges in the amended complaint that the defendant's actions "were intended to benefit himself at the expense of the Plaintiff and were unethical in that they were designed to capitalize on contracts carefully cultivated by the Plaintiff." The court finds that when read in a light most favorable to the plaintiff, the allegations set forth in the complaint sufficiently allege that the defendant acted unfairly and deceptively.
For the foregoing reasons, the defendant's motion to strike count two of the plaintiff's complaint is denied.
Comerford, J. CT Page 2750
[EDITORS' NOTE: This page is blank.] CT Page 2751
CT Page 2751